

duenas.rsp2

LEONARDO M. RAPADAS
United States Attorney
KARON V. JOHNSON
Assistant U.S. Attorney
Suite 500, Sirena Plaza
108 Hernan Cortez Ave.
Hagåtña, Guam 96910
Telephone: (671) 472-7332
Telecopier: (671) 472-7334

Attorneys for the United States of America

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF GUAM

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | CRIMINAL CASE NO. 07-00039 |
| Plaintiff, ) | GOVERNMENT'S BRIEF |
| ) | CONCERNING FRUIT OF |
| vs. ) | THE POISONOUS TREE |
| ) | AND STATEMENTS OF |
| RAYMOND IGNACIO DUENAS, JR.., and, ) | RAY DUENAS |
| LOURDES CASTRO DUENAS, ) | |
| Defendants. ) | |

### SUMMARY OF PROCEEDINGS TO DATE

On October 2, 2007, defendants filed a motion to suppress all the evidence seized during the execution of a search warrant at their residence April 19, 2007. They initially cited Wilson v. Lane, 526 U.S. 603 (1999), in support of their motion, a *Bivens* case in which officers had invited the media to ride along while they executed an arrest warrant. During the evidentiary hearing on the motion, which began October 16, 2007, other cases were presented to the court concerning the issue of media/civilian presence during the performance of official police duties. The entire focus of the hearing concerned the media which arrived at the scene some hours after police initiated the search.

During the hearing, the government introduced the property custody receipts which listed the evidence it intends to use in its case in chief. The officers who seized and inventoried these

1

items testified that no civilians were present during the search, the seizure, or the subsequent booking of this property. The government does not intend to use or reference the mountains of other items taken from the Duenas residence[1].

In its brief following the hearing, the government reiterated the general rule, that the exclusionary rule is limited to evidence which 1) was seized illegally and 2) which the government intends to use against the victim of the police misconduct. United States v. Leon, 468 U.S. 897, 910 (1984). The fact that some evidence may have been seized illegally does not affect the admissibility of the items which were legally seized. United States v. Tamura, 694 F.2d 591 (9th Cir. 1982). Given that the media had nothing to do with the search or seizure of the evidence which the government proposes to use, the only theory which would support its suppression is that the search was void *ab initio*, that the media presence some hours later invalidated the search from the very beginning, and thus rendered the government's evidence inadmissible, however and wherever it was seized. Accordingly, in its memorandum and subsequent oral argument, the government addressed the issue whether media or civilian presence anywhere in the Duenas yard–front, side, or back–was a Fourth Amendment violation.

## FRUIT OF THE POISONOUS TREE

In their memorandum filed November 26, 2007, the defendants allege the government "admits" it intends to distinguish between evidence it will use and evidence it will not use. Well, of course. From the beginning of this motion, the only issue before this court has been the admissibility of the guns, drugs, jewelry, money, and drug records which the government intends to use in the prosecution of the charges before this court. Nothing else. The only relevance of the legality of other seizures is whether those seizures somehow tainted the government's

---

[1] This is basic trial strategy. It would be easy enough for an expert to testify that drug traffickers are frequently in possession of large amounts of stolen property, because they take such items in trade for illegal drugs, and thus the amount of property seized from the Duenas property is evidence they were dealing drugs. While superficially appealing, such testimony would be objectionable unless the government first established just how many of these items were stolen. For example, were the expert to testify that the presence of 19 stolen weed-wackers is evidence of drug trafficking, his testimony would have no foundation unless the government first demonstrated that 19 of the seized weed-wackers were in fact stolen, and not property which belonged to Ray Duenas' late father. Given the strength of the government's other evidence, this just isn't worth the trouble.

evidence. At page 3 of their memorandum the defendants added a new twist to their argument, that the government's evidence should be suppressed because it is the "fruit of the poisonous tree." It is no such thing.

29 Am.Jur 2d Evidence § 633 adequately summarizes this doctrine:

> "The exclusionary rule prohibits the introduction of derivative evidence, both tangible and testimonial, that is the product of primary evidence seized during an unlawful search or that is otherwise acquired as the indirect result of an unlawful search, up to the point at which the connection with the unlawful search becomes so attenuated as to dissipate the taint." Wong Sun v. United States, 371 U.S. 471 (1963). ...

> "Under the fruit of the poisonous tree doctrine, if the entry into a defendant's residence was illegal, it must then be determined whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint; ..." U.S. v. Fields, 371 F.3d 910 (7th Cir. 2004).

In short, the contested evidence must be derivative, seized <u>subsequent</u> to the illegal activity complained of. As Wong Sun explained, there must have been a "primary illegality," and the evidence which the defense seeks to suppress must have been discovered by "exploitation" of that illegality. Id. at 488. The evidence in question must be the "product" of the initial constitutional violation. Segura v. United States, 468 U.S. 796, 815 (1984).

This doctrine is clearly inapplicable here. The evidence which the government intends to use was found as a direct consequence of the search warrant. It is not derivative evidence discovered only because media representatives and civilians were allowed on the property while the search was in progress.

## STATEMENT OF RAY DUENAS

Edwards v. Arizona, 451 U.S. 477, 484-85 (1981) held that when an accused has invoked his right to have counsel present during custodial interrogation, he cannot be subject "to further <u>interrogation</u> by the authorities" until counsel has been made available to him. (Emphasis added). This issue comes down to whether Officer Smith's question "How are you feeling, Ray?" constitutes interrogation for purposes of Edwards and Miranda. The Edwards rule does not prohibit <u>any</u> conversation with the suspect, but only such communications which constitute <u>interrogation</u>, "words or actions on the part of the police (other than those normally attendant to

3

| | |
|---|---|
| 1 | arrest and custody) that the police should know are reasonably likely to elicit an incriminating |
| 2 | response from the suspect." <u>Rhode Island v. Innis</u>, 446 U.S. 291, 301 (1980). A typical example |
| 3 | of the sort of "conversation" which the courts consider interrogation is <u>United States v. Orso</u>, 266 |
| 4 | F.3d 1030 (9th Cir. 2001), where the defendant had been arrested for robbery of a letter carrier |
| 5 | and was in the back seat of the postal inspectors' car, being driven to their office for an |
| 6 | interview. Along the way, an inspector first told the defendant not to say anything, but then |
| 7 | launched into a review of the evidence against her, added that a witness may have seen her with a |
| 8 | gun (a deliberate falsehood), then expiated on the enhanced penalties for armed robbery. On |
| 9 | appeal, the court held that his observations clearly constituted interrogation: the inspector |
| 10 | "should have known that it was reasonably likely his comments" would cause the defendant to |
| 11 | make statements about the robbery. <u>Id.</u> at 1033. |

Given that Officer Smith intended to take Duenas to the Agana lockup for booking, and given that the last time Smith had seen Duenas, he was waiting for X-rays at the hospital, Smith's question was normally attendant to Duenas' arrest and custody. One would not ordinarily expect that "How are you feeling, Ray?" would cause Duenas to say that he wanted to talk to Smith but didn't want to talk to the Feds because they scared him.

RESPECTFULLY SUBMITTED this 29th day of November, 2007.

LEONARDO M. RAPADAS
United States Attorney
Districts of Guam and the CNMI

By: /s/ Karon V. Johnson
KARON V. JOHNSON
Assistant U.S. Attorney